**R. DAKIN & COMPANY, d/b/a the Dardenelle Co., Plaintiff,**

v.

**A & L NOVELTY CO., INC., Defendant.**

No. 75–C–1292.

United States District Court,
E. D. New York.

Jan. 9, 1978.

Owen, Wickersham & Erickson, Melville Owen, San Francisco, Cal., Morgan, Finnegan, Pine, Foley & Lee, John L. Welch, New York City, for plaintiff.

Harold Sacks, New York City, for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

COSTANTINO, District Judge.

This is an action for infringement of copyrights on five stuffed toy animals. Trial was before the court without a jury. The court has jurisdiction of the parties and the subject matter under the Copyright Law, Title 17 U.S.C. and 28 U.S.C. § 1338.

*Findings of Fact*

Plaintiff, R. Dakin & Company, is a California corporation with its principal place of business in Brisbane, California. Dakin does some of its business through an operating division called The Dardenelle Company. Defendant, A & L Novelty Co., Inc., is a New York corporation having its principal place of business in Brooklyn, New York.

Dakin manufactures and sells high quality stuffed toy animals. Its products are sold to department stores, gift shops, discount stores, and variety chains. Dakin relies principally on its semiannual catalogs and its attendance at various toy shows to advertise its products. Since 1968, Dakin has participated in the annual New York Toy Show held at 200 Fifth Avenue, New York, New York, and at various hotels throughout New York City. Dakin has maintained a year-round showroom at 200 Fifth Avenue since 1970.

A & L Novelty is also in the business of manufacturing and selling stuffed toy animals. It sells its products mainly to discount stores, department stores, and chain stores. Since 1960, A & L has maintained a sales office at 200 Fifth Avenue in New York City and also participated in the annual New York Toy Show.

Between 1968 and 1974, Dakin manufactured and obtained copyrights for the five stuffed animals that are the subjects of this lawsuit. The date of first publication, the period of distribution, the copyright registration number, and the date of issuance of each of these stuffed animals are as follows:

| Item | First Publication | Period of Distribution | Copyright Reg. No. |
|---|---|---|---|
| Frogaboo | July 9, 1968 | 1968–1972 | Gp 74730<br>August 25, 1971 |
| Hippoboo | January 21, 1969 | 1969–1976 | Gp 74731<br>August 25, 1971 |
| Hilda Hippo | October 19, 1971 | 1971–1976 | Gp 83582<br>February 23, 1973 |
| Fishaboo | April 29, 1970 | 1970–1974 | Gp 74732<br>August 25, 1971 |
| Gabby Gibbon | March 27, 1974 | 1974–1975 | Gp 98420<br>April 29, 1975 |

All samples of Dakin's stuffed toy animals have had the Dakin notice affixed to them.

Dakin's Frogaboo, Hippoboo, and Fishaboo are stuffed toy animal pajama bags with wide, open mouths for receiving pajamas. Hilda Hippo is a bean bag; other than that it essentially is a smaller version of Hippoboo. Gabby Gibbon is a stuffed toy animal.

### A. Stuffed Toy Pajama Bags

The prototypes of Dakin's Frogaboo, Hippoboo, and Fishaboo were submitted to Beverly Lund, Dakin's Product Development Coordinator, by Virginia Clark, an independent designer. What interested Dakin in regard to the prototypes was that each combined the attributes of a pajama bag, a pillow, and a stuffed toy. While pajama bags in the shape of animals have been on the toy market for a long time, Dakin felt that the pajama bag—pillow—stuffed toy was a novel concept worthy of further development. Therefore, Dakin invested its time and resources into converting the crude and unattractive prototypes into stylized, colorful, attractive products. It began to market Frogaboo, Hippoboo, and Fishaboo in 1968, 1969, and 1970, respectively. The items appeared in Dakin's catalogs and were displayed in its showroom at 200 Fifth Avenue. Prior to the Fall of 1971, Dakin had sold and distributed over 8,000 Frogaboos, over 13,000 Hippoboos, and over 6,000 Fishaboos throughout the country.

In early 1972, A & L began marketing the following stuffed toy pajama bags with wide, open mouths for receiving pajamas: Stuffed Toy Frog, No. 041/PJ, Stuffed Toy Hippo, No. 042/PJ, and Stuffed Toy Fish, No. 044/PJ. A & L's products are strikingly similar to Dakin's. In comparing Dakin's Hippoboo with A & L's Stuffed Hippo, the form of expression of the two stuffed toys is practically identical. Both toys are made of plush material. The shape of the head and body, the placement of the eyes, ears,

nose, and mouth, and the color scheme (though not the particular colors) of the toys are the same. A & L's Stuffed Hippo differs from Dakin's product in that it is slightly smaller, it lacks the small tail found on Dakin's Hippoboo, its nostrils are made of black felt dots rather than black felt crescents, and its ears are slightly larger (although they are the same shape and made of the same felt material). An additional difference between the parties' stuffed toys is that the eyes on Dakin's Hippoboo are made of multiple pieces of felt placed in such a way as to give the toy an almost entreating look on its face, while A & L's Stuffed Hippo has paper eyes that stare straight ahead. The effect of these differences, however, is minimal, and the ordinary observer would be prone to overlook them and regard the toys as the same.

The differences between Dakin's Fishaboo and A & L's Stuffed Fish are also minimal. While both toys have felt dots to represent nostrils, A & L's are slightly larger. Both toys use three eccentric circles for eyes, but Dakin's "glance" upward while A & L's "glance" downward. In addition, Dakin's product uses felt pieces for the eyes and has felt eyebrows, while A & L's product has paper eyes and no eyebrows.[1] Other than these minor differences, the products are almost identical. Their shape is the same, as is the placement of one felt "fin" on each side of the body and a double felt "dorsal fin" at the top of the body. Both toys are made of brightly colored plush felt.

The similarities between Dakin's Frogaboo and A & L's Stuffed Frog also outweigh the differences between them. The body shapes of the two toys are substantially similar. Both toys have small bumps in the vicinity of the eyes. Both toys have felt "legs" that end with three points serving as "toes." The rear "legs" of each toy frog are attached to a circular piece of felt located on the rear sides of the frogs so as to produce the effect of the folded legs of a

---

1. While the samples of A & L's Stuffed Fish contained no eyebrows, A & L's designer, Ernst Gruber, testified that early versions of the toy did have eyebrows and that they were part of the original design.

frog. The fact that A & L's frog has paper eyes with lashes and felt nostrils, while Dakin's frog has multiple pieces of felt for eyes and no nostrils, does not alter the substantial similarity between the parties' products.

## B. Stuffed Toy Monkeys

In March of 1974, Dakin obtained a copyright for and began marketing Gabby Gibbon, a stuffed toy gibbon. Virginia Kemp, Dakin's head designer, began preparing design sketches for a stuffed toy gibbon in March, 1973. In January of 1974, Ms. Kemp finalized the design for Gabby Gibbon. While the original design sketch had the arms and legs of the toy extended, the final design sketch showed the legs in a folded, sitting position. When the product was produced, the arms were crossed and sewn together to keep the legs folded, and the thighs were tack-sewn to the body.

In about June of 1974, Gabby Gibbon was advertised in Dakin's Fall 1974 Catalog. By the Fall of 1974, over 7,500 Gabby Gibbon toys had been sold.

In January, 1975, A & L began marketing a Stuffed Toy Baboon, style numbers 633, 1033, 1333, and 5033. The Stuffed Toy Baboon was advertised on the cover of A & L's 1975 Catalog; it is substantially similar in appearance to Dakin's Gabby Gibbon. Both toys appear to represent seated gibbon monkeys. Like a gibbon, each monkey has a black face encircled by white trim. The hands and feet of both toys are also white. The toys differ in that Dakin's Gabby Gibbon has a brown body, like a real-life gibbon, while A & L's Stuffed Toy Baboon has a yellow body. In addition, A & L's toy has a small plastic nose on its snout and a red tongue protruding from its mouth. These features do not appear on Gabby Gibbon. These differences, however, are slight in comparison to the similar features, coloring, and posture of the toys.

In the early part of 1975, Harold Nizamian, Dakin's president, was visiting the showroom of Just Accessories, one of Dakin's sales representatives located at 112 West 34th Street in New York City. Just Accessories represented both Dakin and A & L and displayed both toy lines in its showroom. During the course of his visit, Mr. Nizamian noticed A & L's 1975 Catalog which features on its front cover a toy monkey very similar to Dakin's Gabby Gibbon. Upon perusing the catalog, Mr. Nizamian discovered A & L's Stuffed Hippo, Stuffed Fish, and Stuffed Frog, all of which closely resembled products of Dakin's.

Dakin notified A & L that it considered the latter's products to be very similar to its own and demanded that A & L stop making and selling the items. A & L complied with the demand by ceasing sales of the products in issue and redesigning the facial expression of its Stuffed Baboon. Prior to the cessation of sales of the items in issue, A & L sold 63,636 of such items for a total sales figure of $128,887.20.

## Conclusions of Law

In order to prove copyright infringement a plaintiff must establish ownership of a valid copyright and copying by the defendant. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090 (2d Cir. 1977); 2 M. Nimmer, Nimmer on Copyrights § 141 at 611 (1976). Dakin's ownership of the copyrights in issue is not in dispute and there is no question but that stuffed toy animals are entitled to copyright protection. *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F.Supp. 416 (S.D.N.Y. 1965).

Defendant attempted to show that plaintiff's toy designs were taken from the public domain in that stuffed toy pajama bags have been on the market for a number of years and plaintiff's toys are not sufficiently original to warrant copyright protection. However, "the required creativity for copyright is modest at best", *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 411 (2d Cir. 1970), and the mere fact that plaintiff used a matter in the public domain does not in and of itself preclude a finding of originality, since plaintiff may have added unique features to

the matter so as to render it copyrightable to plaintiff. *Blazon, Inc. v. DeLuxe Game Corp., supra* at 421–22.

■■■ The court finds that plaintiff's toys are sufficiently original to warrant copyright protection. Defendant produced no clear evidence that plaintiff copied from toy pajama bags previously on the market. Absent such evidence, works such as these, having copyright registration certificates, are entitled to a presumption of originality. 17 U.S.C. § 209.

■ Having determined that plaintiff's copyrights are valid, the sole issue that remains is whether defendant copied plaintiff's toy animals. Because proof of direct copying is rare, plaintiff may prove copying by showing that defendant had access to plaintiff's toys and that there is substantial similarity between the parties' toys. *Novelty Textile Mills v. Joan Fabrics Corp., supra* at 1092.

There is sufficient evidence in the record to establish that defendant had access to plaintiff's toys. The parties both had showrooms at 200 Fifth Avenue in New York City, both attended the Annual New York Toy Show where plaintiff exhibited its products, they had at least one sales representative in common (Just Accessories), plaintiff's sales catalogs containing photographs of its toys were widely disseminated, and Arthur Wessan, defendant's president, testified that he tried to keep abreast of developments in the toy market.

There is also substantial similarity between the parties' toys. Differences do exist, but "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). The similarities between the parties' toys are so striking that the only logical conclusion is that defendant copied plaintiff's designs. The testimony of Ernst Gruber, defendant's designer, that he independently created the designs for defendant's Stuffed Toy Frog Pajama Bag, Stuffed Toy Hippo Pajama Bag, Stuffed Toy Fish Pajama Bag, and Stuffed Toy Baboon, without ever having seen plaintiff's toys, is simply not credible. There is almost no similarity between the pictures and cards that Mr. Gruber claimed to use to develop the designs for A & L's stuffed toys and the final products. On the other hand, the similarity between A & L's toys and Dakin's toys is too striking to be coincidental. Accordingly, the court finds that defendant copied plaintiff's Frogaboo, copyright No. Gp 74730, Hippoboo, copyright No. Gp 74731; Hilda Hippo, copyright No. Gp 83582; Fishaboo, copyright No. Gp 74732; and Gabby Gibbon, copyright No. Gp 98420 in violation of Title 17 of U.S.C.

■ Defendant has raised the defense of laches, arguing that the plaintiff permitted the defendant to infringe upon plaintiff's copyright for a number of years without pursuing its infringement claim. The defense lacks merit. It was not until the early part of 1975 that plaintiff discovered defendant's infringement. No evidence was introduced to show exactly when it was that plaintiff first complained to defendant of the infringement, but it was sometime in 1975. Defendant offered no proof that it was prejudiced by any delay on plaintiff's part in notifying defendant of the infringement. Absent a showing that plaintiff unreasonably delayed notifying defendant of the infringement and that defendant was prejudiced by any such delay, the defense of laches is not available. *American Greetings Corp. v. Kleinfab Corp.*, 400 F.Supp. 228, 233–34 (S.D.N.Y.1975).

*Damages*

■ Section 101(b) of the Copyright Act provides that an infringer shall be liable:

To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims . . . .

In the Second Circuit, Section 101(b) has been read to permit the court to award both damages sustained by the plaintiff and profits realized by the defendant. *Thomas Wilson & Co. v. Irving J. Dorfman Co.,* supra at 413–14; *Alouf v. Expansion Products, Inc.,* 417 F.2d 767 (2d Cir. 1969). Where, as here, the actual damages sustained by the plaintiff are incapable of exact proof, the court may award plaintiff a discretionary sum "in lieu" of plaintiff's actual damages. *Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc.,* 329 F.2d 194 (2d Cir. 1964).

The court lacks sufficient information to reach a finding as to the profits realized by the defendant from the infringing items. The only figure before the court is $128,-887.20, representing the total sales of defendant's infringing items. Therefore, the court orders the parties to appear before it in order to establish defendant's profits from the infringements and plaintiff's costs, including reasonable attorney's fees. The parties shall contact the court to arrange a conference on the issue of damages.

The foregoing shall constitute the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

So ordered.