956 F.2d 268
 1992 Copr.L.Dec. P 26,880, RICO Bus.Disp.Guide 7969,
21 U.S.P.Q.2d 2014
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BANCTRAINING VIDEO SYSTEMS, Plaintiff-Appellee,
v.
FIRST AMERICAN CORP., Defendant-Appellant.
 No. 91-5340.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1992.
 
 Before RALPH B. GUY, Jr., ALAN E. NORRIS and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant, BancTraining Video Systems, appeals the District Court's granting of JNOV for defendant-appellee, First American Corp., on its copyright infringement claim and the District Court's granting of defendant's motion to dismiss on its claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. The issues before us are whether plaintiff proved authorship of the copyrights either as a joint author or in a work made for hire arrangement, and whether plaintiff sufficiently stated a RICO claim by alleging an intent to infringe copyrights or an intent to obstruct justice. We affirm the District Court's rulings because BancTraining failed to show that it was the author of the copyrights and failed to plead sufficiently a RICO claim.
 
 
 2
 BancTraining Video Systems is a partnership created by a joint venture agreement between Financial Shares Corp. (FSC) and CMF & Z Advertising Agency for the purpose of making and selling employee training videotapes for banks. A joint venture agreement was signed by the presidents of FSC and CMF & Z, but BancTraining is neither a party nor a signatory to the agreement.[1] That agreement states: "The joint venture shall be the owner of the Program, and the videotapes and written materials prepared hereunder. Trademarks and copyrights in the Program shall be registered in the names of the parties jointly."
 
 
 3
 To produce the videotapes, the American Bankers Association (ABA) and Jeanie Jorgensen, a BancTraining employee, selected a topic. Then script-writers from FSC were hired to prepare an outline. The outline was reviewed by Jorgensen and the ABA, and the script-writers prepared the full script. Finally, video producers from CMF & Z were hired to build sets, hire actors and produce the film. Jorgensen supervised and reviewed both the script-writing and the video production, and filed the paperwork to register the copyrights on the tapes. Banctraining filed copyright registrations for each of the tapes. Each of these registrations lists "BancTraining Video Systems" as the copyright claimant and author of the tape, and contains an "X" in the "Yes" box for the question, "Was this contribution to the work a 'work made for hire?' "
 
 
 4
 Defendant, First American Corp., a bank with branches throughout Tennessee, purchased 36 videotapes from BancTraining between 1983 and 1986, as well as a number of duplicate tapes. Defendant also purchased tapes from a St. Louis firm, Bankers Training, which defendant's employees admitted copying. In 1986, Bankers Training filed suit [hereinafter "the St. Louis suit"] against defendant for copyright infringement. Upon learning of the concerns about copyright infringement, First American stopped copying tapes purchased from other tape companies, had all affiliate banks return duplicates to the training department, and erased and taped over the videotapes other than those of Bankers Training. The St. Louis suit was settled before trial, and First American's attorney discarded documents from that litigation except for some discovery materials and depositions.
 
 
 5
 Plaintiff contends that defendant's employees also copied plaintiff's tapes for use within the bank and sent copies to affiliate banks. An attorney from the St. Louis suit testified that one First American employee stated in a deposition that First American ordered BancTraining tapes, that tapes from outside sources were copied "if needed or necessary," and that a copy of one of BancTraining's tapes was made. In addition, defendant's resource catalog offered a tape-copying service, and listed one of BancTraining's tapes as being available in one-half-inch and three-fourths-inch formats, although defendant had purchased only one format from plaintiff. Defendant's employees, however, testified that they did not know of anyone's copying plaintiff's tapes. At trial, the jury found that defendant had violated the copyrights as to three of the 36 tapes. The jury awarded plaintiff statutory damages of $10,000 per tape, or $30,000. In granting defendant's motion for JNOV, the District Court held that BancTraining had demonstrated that defendant infringed the copyrights, but that it had failed to show that it owned the copyrights as a joint author or through a work made for hire agreement.
 
 
 6
 BancTraining's Second Amended Complaint also contains a RICO claim, alleging that defendant initiated a scheme in which defendant would duplicate plaintiff's tapes and send them by mail to affiliate banks. The complaint further claims that defendant contacted plaintiff by phone and mail to induce plaintiff to sell its videotapes to defendant without disclosing an intent to violate the Copyright Act, that the tapes were illegally pirated and shipped through the mail to affiliate banks in violation of 18 U.S.C. §§ 1341 & 1343, and that defendant's employees destroyed pirated tapes and documents, although there were then pending both an F.B.I. investigation and the St. Louis lawsuit.
 
 
 7
 The District Court dismissed the RICO claim, holding that the complaint failed to allege the necessary acts of racketeering activity and failed to allege an intent to defraud or to obstruct justice.
 
 1. The JNOV Ruling
 
 8
 We must review de novo the District Court's granting of the JNOV. Pinney Dock & Transp. Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196 (1988). In reviewing a motion for JNOV, we must apply the same standard the District Court should have applied: a JNOV is appropriate only when, based on the evidence, reasonable minds could not find as the jury has found. Certer v. Chattanooga, 803 F.2d 217, 225 (6th Cir.1986), vacated on other grounds, 850 F.2d 1119 (6th Cir.1988), cert. denied, 488 U.S. 1010, 109 S.Ct. 795 (1989). We are to view the facts proven at trial in the light most favorable to BancTraining, Hill v. Spiegel, Inc., 708 F.2d 233 (6th Cir.1983), and we may not consider the credibility or the weight of the evidence, Patrick v. South Central Bell Telephone Co., 641 F.2d 1192, 1197 (6th Cir.1980).
 
 
 9
 For the reasons that follow, we find that the judgment of the District Court must be affirmed.
 
 
 10
 Initial ownership of a copyright vests in the author or authors of the work, or, in the case of a work made for hire, in the employer or other person for whom the work was prepared, who is considered to be the author. 17 U.S.C. § 201(a) and (b). The certificate of registration requires that the name of the author of the work and the name of the claimant of the copyright be separately designated, even if they are one and the same, and further requires that if the claimant is different from the author, a statement be included explaining how the claimant obtained ownership of the copyright. See Jt. Appendix 1215-1348, Jt. Exhibits 45A through 80A. Thus, a copyright claimant could establish authorship either by showing that it is a joint author or that it is the employer in a work made for hire arrangement. It otherwise could establish ownership of the copyrights by providing the required statement detailing how transfer of the copyrights to it were made.
 
 
 11
 The filing of a certificate of registration creates a rebuttable presumption of the validity of a copyright and of the facts contained in the certificate regarding ownership. 17 U.S.C. § 410(c).[2] Therefore, BancTraining's certificates of registration, which denominate BancTraining as both the author and the copyright claimant, are prima facie evidence of its authorship of the tapes either as a joint author or through a work made for hire agreement,[3] and of its representation that it claimed ownership of the copyrights by virtue of authorship and not by transfer.
 
 
 12
 Defendant, however, rebutted the presumption of authorship by showing that BancTraining was neither a joint author nor the employer in a work made for hire arrangement. The presumption of joint authorship was rebutted through Jeanie Jorgensen's own testimony[4] that indicated that she was not sufficiently involved in the creative process of making the tapes to be a joint author. Authors of a joint work[5] are co-owners of the copyright in the work, 17 U.S.C. § 201(a). A person who conceives an idea is not an author. 17 U.S.C. § 102(b).[6] An author is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 742, 109 S.Ct. 2166, 2171 (1989). Providing sketches, ideas or supervision over copyrightable material is not sufficient to make one a joint author. M.G.B. Homes, Inc. v. Ameron Homes Inc., 903 F.2d 1486, 1493 (11th Cir.1990) (providing sketches and ideas does not constitute creating); S.O.S. Inc. v. Payday Inc., 886 F.2d 1081, 1086 (9th Cir.1989) (ideas and supervision over computer software not sufficient for joint authorship); Ashton-Tate Corp. v. Ross, 728 F.Supp. 597 (N.D.Cal.1989) (contribution to joint work must be protectable in itself; only expressions of ideas, not ideas themselves, give rise to protected interest), aff'd, 916 F.2d 516, 521 (9th Cir.1990); Whelan Associates v. Jaslow Dental Laboratory Inc., 609 F.Supp. 1307, 1318-19 (D.Pa.1985) (same), aff'd on other grounds, 797 F.2d 1222 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 877 (1987). But see Community for Creative Non-Violence v. Reid, 846 F.2d 1485, 1496 (D.C.Cir.1988), (contributions need not be equal or independently copyrightable if each is more than de minimus ), aff'd on other grounds, 490 U.S. 730, 109 S.Ct. 2166 (1989); M. Nimmer, Nimmer on Copyright, § 6.07, at 6-21 (contributions must only be more than de minimus ).[7] Thus, Jorgensen's supervision of the production and her ideas for the videotapes do not make her a joint author of them, and therefore BancTraining cannot own the copyright through her participation as a joint author.
 
 
 13
 Defendant also rebutted the presumption of authorship as a work made for hire project because the joint venture agreement does not meet the statutory requirements under 17 U.S.C. § 101 to create such an arrangement. The employer owns the copyright in a work made for hire arrangement. 17 U.S.C. § 201(b). A work made for hire arrangement requires either that an employee prepare the work or that the work be specially commissioned in an express written agreement by the parties that specifically states that the work is to be work made for hire. 17 U.S.C. § 101.[8] Jorgensen, although an employee of BancTraining, did not prepare the tapes, and the creators who did prepare the tapes were independent contractors and not employees, and thus these tapes do not fall within the first definition of a work made for hire contained in § 101. Further, the joint venture agreement is not sufficient to constitute a written agreement for work made for hire under the second definition contained in § 101. Not only does that agreement not expressly state that the work is made for hire, the joint venture agreement specifically provides that the "parties" shall hold the copyrights jointly, and, as noted hereinabove, BancTraining clearly was not a party to the agreement.
 
 
 14
 Because defendant sufficiently rebutted the presumption of authorship, the burden of proof shifted back to plaintiff to prove ownership. M. Nimmer, supra, 12.11[B], at 12-150 to 12-151. Plaintiff, however, failed to produce evidence to show that BancTraining was either a joint author or the employer in a work made for hire project.
 
 
 15
 Finally, plaintiff failed to produce any evidence to demonstrate that BancTraining had acquired the copyrights at issue by any means other than authorship or through work made for hire, such as, for example, by assignment by the author or owner.
 
 
 16
 The District Court granted JNOV to the defendant because it found that the issue of copyright ownership in an infringement action is not an affirmative defense, but is an element of the cause of action, that the burden of proving ownership is at all times on the party claiming infringement, in this case the plaintiff, and that the plaintiff had not presented sufficient proof of ownership of the copyrights to permit the jury to find for the plaintiff on the infringement claim. We find no error in the District Court's holding and we affirm. We hasten to add, however, that we do so without enthusiasm for the result in this case, because the plaintiff did present considerable evidence of unauthorized copying by the defendant. Nonetheless, the District Court correctly found that the failure of the plaintiff to prove one of the elements of its claim for relief dictates the granting of the JNOV.[9]
 
 2. The RICO Claim
 
 17
 The District Court dismissed BancTraining's RICO claim because the Second Amended Complaint did not allege intent to defraud or to obstruct justice. The District Court held that inasmuch as copyright infringement itself is not fraud, in order for copyright infringement to be the basis for predicate acts of mail and wire fraud, the plaintiff must allege that defendant intended to defraud, using the mails or the wires, through some scheme involving copyright infringement. The District Court found that plaintiff had wholly failed to do this. In addition, the District Court found that it was unnecessary to determine whether the single act of obstruction of justice alleged in the Second Amended Complaint was a properly pled predicate act because a single predicate act is not sufficient to form the basis for a RICO claim.
 
 
 18
 The District Court was entirely correct and we affirm. In addition, we note that the Second Amended Complaint fails to specify which subsection of 18 U.S.C. § 1962 plaintiff claims defendant has violated, and that the allegations in the complaint do not allege facts which implicate any of the distinct violations that comprise § 1962. To state a violation of § 1962(a), the complaint must contain factual allegations that plaintiff was injured by defendant's use or investment of income derived from a pattern of racketeering activity to acquire, establish or operate an enterprise. 18 U.S.C. § 1962(a); Rose v. Bartle, 871 F.2d 331, 356-58 (3d Cir.1989) (plaintiffs must show injury by investment of money). To state a violation of § 1962(b), the complaint must contain factual allegations that plaintiff was injured by the defendant's acquisition of an interest in or control of an enterprise through racketeering activity. 18 U.S.C. § 1962(b); Litton Indus. Inc. v. Lehman Bros. Kuhn Loeb Inc., 709 F.Supp. 438 (S.D.N.Y.1989) (plaintiff must show connection between acquisition of interest in or control of enterprise and injury). To state a violation of § 1962(c), the complaint must contain factual allegations that plaintiff was injured by the conducting of the affairs of the enterprise through racketeering activity. 18 U.S.C. § 1962(c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285 (1985) (plaintiff must show injury caused by operation of enterprise or participation in enterprise).
 
 
 19
 Plaintiff's Second Amended Complaint asserts that the defendant, in association with several other entities, constituted an enterprise that engaged in a pattern of racketeering activity by committing certain predicate acts of alleged mail and wire fraud and obstruction of justice, and that plaintiff was injured by those acts. It is simply not sufficient to claim injury as a result of the alleged predicate acts because it is not a violation of RICO to commit the predicate acts. The violation lies in the carrying on of the affairs of the enterprise through those acts, or in the investment in an enterprise of income derived from those acts, or in the acquiring of control or maintaining of an interest in an enterprise through those acts. Kramer v. Bacham Aerospace Corp., 912 F.2d 151, 154-55 (6th Cir.1990) (plaintiff must be injured by conduct constituting RICO violation); Burdick v. American Express Co., 865 F.2d 527, 529 (2d Cir.1989) (same). The civil remedy permitted by 18 U.S.C. § 1964 is only available to one injured in his business or property by such violation. No such activity is alleged here, and for that reason as well, the judgment of the District Court dismissing the RICO claim must be affirmed.
 
 3. Conclusion
 
 20
 For the reasons set out above, we affirm the District Court's rulings and this case is dismissed.
 
 
 
 [1]
 It is clear that FSC and CMF & Z did not intend that Banctraining be considered a party to the agreement from a number of provisions in the agreement, such as Paragraph 20 which provides that "[e]ither party shall have the right to terminate the joint venture ..." and Paragraph 22 in which "Each party warrants and represents to the other that: (1) it is a corporation duly organized and validly existing and in good standing under the laws of the state in which it is incorporated ..." (Jt. Appendix at 1197-1214)
 
 
 [2]
 In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court
 17 U.S.C. § 410(c).
 
 
 [3]
 BancTraining is not limited to claiming ownership solely under the work made for hire doctrine merely because the certificates indicate that the contribution was a work made for hire. In Frost Belt Intern. v. Cold Chillin' Records, 758 F.Supp. 131, 137 (S.D.N.Y.1990), the court held that checking "no" on the registration certificate indicating that work was not made for hire did not dictate that the work was not made for hire. "[T]he Court is hardly persuaded that Registration Certificate's preparer, Mr. Nooger, intended with two small strokes of his pen to relinquish plaintiff's copyright to the work while completing a form which was to have precisely the opposite effect." Id. at 137 n. 12. We agree with this reasoning, and find that despite checking the box on the certificates, the certificates created a presumption of ownership by either joint ownership or work made for hire. See also Craft v. Kobler, 667 F.Supp. 120, 125 (S.D.N.Y.1987) (copyright and authorship is not invalidated by fact "work for hire" was not checked on certificate as long as the facts sustain plaintiff's position and misstatement was inadvertent)
 
 
 [4]
 Although the case law does not address this issue directly, it seems apparent that defendant need not present independent evidence to rebut the presumption of authorship, but can rely on plaintiff's own testimony. Cf. Kingsrow Enterprises, Inc. v. Metromedia, Inc., 397 F.Supp. 879 (S.D.N.Y.1975) (even plaintiff can controvert prima facie evidence in certificates with his own testimony). See also R. Dakin & Co. v. A & L Novelty Co., 444 F.Supp. 1080 (E.D.N.Y.1978) (some evidence that plaintiff is not the author will suffice to overcome the presumption); Blazon Inc. v. Deluxe Game Corp., 268 F.Supp. 416 (S.D.N.Y.1965) (mere denial by defendant unsupported by evidence will not overcome the presumption); M. Nimmer, Nimmer on Copyright, § 12.11[B], at 12-150
 
 
 [5]
 A "joint work" is a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101
 
 
 [6]
 "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b)
 
 
 [7]
 Nimmer contends that the text and legislative history of the Copyright Act support the view that anything beyond a de minimus contribution is sufficient for joint authorship. M. Nimmer, supra, § 6.07, at 6-21. Nimmer defines a de minimus contribution as one in which only a word or a line is added by one claiming to be a joint author. Id. He contends that the intention of the joint authors should be controlling so that even a contributor of skeletal ideas will be rewarded. Id. § 6.07, at 6-22. However, the Supreme Court's definition in Reid, 490 U.S. at 742, 109 S.Ct. at 2171, and the trend in the case law does not support Nimmer's view
 
 
 [8]
 A work made for hire is
 (1) a work prepared by an employee within the scope of his or her employment; or
 (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work ... if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire ...
 17 U.S.C. § 101.
 
 
 [9]
 Because BancTraining was not an author of the tapes, we need not address the timing issue of whether any infringement actually occurred after registration of the copyrights. However, it appears that this would provide an alternative basis for holding that BancTraining cannot state a copyright infringement claim