**BRYCE & PALAZZOLA ARCHITECTS AND ASSOCIATES, INC., Plaintiff,**

v.

**The A.M.E. GROUP, INC.; James Maloney; John McGrath; Mark Goodman and Teri Goodman, jointly and individually, Defendants.**

No. 93–73313.

United States District Court,
E.D. Michigan,
Southern Division.

April 26, 1994.

Kenneth Gross and David Einstandig, Birmingham, MI, for plaintiff.

George Romas, Southfield, MI and John Ronayne, Detroit, MI, for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter comes before the court on Defendants' October 1, 1993 motion to dismiss and/or for summary judgment.[1] Plaintiff filed a response November 4, 1993; and Defendants filed a reply November 12, 1993. Oral argument was heard February 25, 1994. For the reasons set forth in this memorandum opinion, the court will deny Defendants' motion.

### I. Facts

Plaintiff is an architectural firm which designs customized homes. This lawsuit seeks damages for copyright infringement against defendants Mark and Teri Goodman and The A.M.E. Group ("AME"), the architect/builder hired by the Goodmans to construct their home. After the Goodmans viewed a Bloomfield Hills, Michigan home designed with Plaintiff's plans, the Goodmans hired AME to construct a larger home for them on proper-

---

**1.** Defendants Mark and Teri Goodman filed the instant motion. The remaining defendants, A.M.E. Group, Maloney and McGrath, joined in the motion October 5, 1993.

ty in Franklin, Michigan. Plaintiff contends that Defendants subsequently constructed a virtually identical home, differing in size only, thus infringing on Plaintiff's registered copyright of the architectural plans and the building itself.

In June 1990 Plaintiff was engaged as an independent contractor on a fee for service basis by Executive Square Homes Corporation to design and create architectural drawings for a residential dwelling at 1252 Cottingham, Bloomfield Hills. The building permit was issued October 29, 1990; and Plaintiff claims that construction began in January 1991. By June 1991 the home was shown to prospective buyers. Executive Square then listed the home for showing with Cranbrook Realtors.

Cranbrook hosted an open house; and at that time approximately 100 spec sheets, consisting of photocopies of the home's specifications and three sketches of the elevation and floor plans, were made available to prospective buyers. Plaintiff claims that the Goodmans took copies of the spec sheets and hired AME to duplicate the home at 25895 Woodlore Lane, Franklin.

In 1993 Plaintiff became aware that Defendants were constructing a home similar to the one for which it had previously drawn the plans. Plaintiff then registered its copyright of the architectural drawings and the structure on March 8 and March 29, 1993, respectively. Plaintiff then filed the instant action.

This suit seeks actual damages for infringement of Plaintiff's copyright in the drawings (Count I) and in the Bloomfield Hills building (Count II). Because Plaintiff failed to register its copyright prior to the infringement, Plaintiff concedes that it is seeking only actual damages and is asserting no claim for statutory damages.

## II. Standard of Review

It appears from their motion that Defendants are seeking dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which provides

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on

the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

## Standard for Summary Judgment

In considering a motion for summary judgment, the court may grant the motion only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the United States Supreme Court has ruled, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The court must view the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

However, the mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Id.* at 256, 106 S.Ct. at 2514. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue' for trial." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Analysis

Defendants claim they are entitled to summary judgment for the following reasons: a) plaintiff lacks standing to sue, b) the copyright was not registered at the time of the alleged infringement, 3) any copyright claim was forfeited when the plans were dedicated to the public domain, and 4) neither the plans nor the building is covered under the 1990 amendment to 17 U.S.C. § 102.

### A. *Standing*

■ Defendants claim that, pursuant to 17 U.S.C. § 201(b), Plaintiff lacks standing to maintain this action. The statute provides

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the right comprised in the copyright.

17 U.S.C. § 201(b). Defendants contend that Plaintiff's architectural plans fit the definition of a work made for hire, as Plaintiff has stated that it prepared the drawings pursuant to "a fee for service contract with Executive Square." Complaint at 3. Thus, Defendants contend that because Plaintiff and Executive Square failed to execute a written instrument to the contrary, only Executive Square, not Plaintiff, can be considered the author and have standing to institute a suit for infringement.

However, a "work made for hire" is statutorily defined as follows:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. In an unpublished opinion the United States Court of Appeals for the Sixth Circuit has stated that independent contractors are not employees for purposes of the work for hire definition. *BancTraining Video Sys. v. First American Corp.*, No. 91–5340, 1992 WL 42345 at *3, 1992 U.S.App. LEXIS 3677 at *10 (6th Cir. March 3, 1992) (per curiam). In the instant action Plaintiff was clearly an independent contractor, not an employee, of Executive Square. Bryce affidavit at 2; Jokubaitis affidavit at 2.

In addition, Defendants have failed to produce any written instrument signed by Plaintiff and Executive Square expressly stating that the drawings constituted a work made for hire. To the contrary, Plaintiff's affidavits state that Plaintiff and Executive Square had only an oral agreement. *Id.* Therefore, the court finds that the drawings were not a work made for hire as defined by 17 U.S.C. § 101. Because the drawings fail to meet that statutory definition, 17 U.S.C. § 201(b) is inapplicable.

### B. *Plaintiff's failure to register before alleged infringement*

■ It is undisputed that Plaintiff obtained registration of copyright on the architectural plans and on the house as an architectural work on March 8 and 29, 1993, respectively. Also, there is no dispute that Plaintiff obtained registration after it discovered that Defendants had already begun construction on their home. However, pursuant to 17 U.S.C. § 410(c), a certificate of registration may be made "before or within five years after first publication of the work. . . ." Therefore, Plaintiff's failure to register either copyright before any alleged infringement is not fatal to its claim.

Defendants correctly argue that if they had attempted to determine whether the plans had been registered, they would have found no notice of Plaintiff's registration nor of Plaintiff's intent to ever register either copyright. However, these circumstances do not operate to defeat Plaintiff's claims. Plaintiff's claim is governed by the Berne Era of American Copyright Law, which is effective for architectural drawings infringed upon after March 1, 1989. In amending the status of copyright law under the Berne Era, the significance attached to providing copyright notice on published and unpublished work was greatly diminished. During the Decennial Era, which immediately preceded the Berne Era, former § 405 of the Act provided the basis for an innocent infringe-

ment defense which reduced, but did not eliminate, liability under the Act when proved by the infringer. Section 405, however, was amended under the Berne Convention Implementation Act of 1988 as follows:

405(b) Effective Omission on Innocent Infringers.—Any person who innocently infringes a copyright, in reliance upon an authorized copy of phonorecord from which the copyright notice has been omitted and which was publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, incurs no liability for actual or statutory damages under section 504 for any infringing acts committed before receiving actual notice that registration for the work has been made under section 408, if such person proves that he or she was misled by the omission of notice....

17 U.S.C. § 405(b).

Thus, the statute now limits the innocent infringement defense to claims asserted during the Berne Era for which there was public distribution upon authority of the copyright owner *prior* to March 1, 1989. Defendants' argument that publication has occurred in this case is predicated upon their receipt of the spec sheet on the Cottingham dwelling when they viewed the premises in 1991. Therefore, Defendants are barred from asserting an innocent infringer defense on that basis.

Furthermore, as summarized in the most widely cited treatise on American copyright law:

Therefore, as to works published on or after March 1, 1989, notice no longer enters into the calculus of copyright protection. However, as to works previously published, even if the subject of infringement only after that date, the BCIA explicitly reenacts the preexisting notice provisions '[w]ith respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988....'

At this point, the three levels of analysis concerning copyright notice should be clear. First, *as to works published after March 1, 1989, the BCIA excuses all copyright notice requirements as a condition to copyright.*

1 *Nimmer Copyright* § 7.02[C] (1978) (emphasis added). Therefore, the fact that Defendants had no notice of Plaintiff's copyright nor notice of Plaintiff's intention ever to acquire a copyright on the plans or the structure does not operate to defeat Plaintiff's claims.

### C. *Copyright claims were dedicated to public domain*

■ Defendants also contend that Plaintiff "forfeited and abandoned any copyrightable interest by indiscriminate publication and dedication of its works to the public domain." Defendants' motion brief at 9. Defendants cite the following acts as examples of publication: 1) Plaintiff's turning over the plans to Executive Square, a company with at least three employees; 2) Executive Square's disclosure of the plans to potential subcontractors, workers and suppliers; 3) Executive Square's disclosure of the plans to Cranbrook Realtors; and 4) depiction of the home in various sales brochures which were distributed to potential buyers.

Statutory language also defines the term "publication."

"Publication" is the distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies ... to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.

This court finds that Plaintiff's submission of the plans to Executive Square, which commissioned the work, does not constitute the kind of publication which would forfeit Plaintiff's copyright. Other courts have held that distribution to subcontractors for bidding purposes does not constitute publication. *Intown Enter., Inc. v. Barnes,* 721 F.Supp. 1263 (N.D.Ga.1989) (citing *Nucor v. Tennessee*

*Forging Steel Serv., Inc.,* 476 F.2d 386, 390–91 (8th Cir.1973)).

> Pursuant to 17 U.S.C. § 401(a),
>
> Whenever a work protected under this title is published in the United States or elsewhere *by authority of the copyright owner,* a notice of copyright as provided by this section shall be placed on all publicly distributed copies from which the work can be visually perceived, either directly or with the aid of a machine or device.

17 U.S.C. § 401(a) (emphasis added).

■ As for Executive Square's distribution of the plans to Cranbrook Realtors and the subsequent distribution of the plans to potential buyers, a genuine issue of material fact exists regarding whether Plaintiff was aware of the distribution. In addition, genuine issues of material fact exist regarding the number of brochures that were distributed to the public, as Defendants filed the instant motion before discovery has been conducted. Accordingly, Defendants are not entitled to summary judgment at this time on the basis of forfeiture by publication.

### D. *The 1990 amendments preclude a cause of action*

■ Count II of the complaint states a claim for alleged infringement of Plaintiff's copyright in the Bloomfield Hills structure itself. In 1990, architectural works became subject to protection under 17 U.S.C. § 102(a)(8). The term "architectural work" is defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. The effective date of inclusion of architectural works into the copyright statute is December 1, 1990. 17 U.S.C. § 102.

> Regulation § 202.11(d) provides as follows:
> (D) *Works Excluded.* The following structures, features, or works cannot be registered:
> (3) *Pre–December 1, 1990 Building Designs.* The designs of buildings where the plans or drawings of the builder were published before December 1, 1990, or the buildings were constructed or otherwise published before December 1, 1990.

Defendants contend that the plans or drawings were published before December 1, 1990. Plaintiff concedes that its drawings of the Bloomfield Hills home *existed* prior to December 1, 1990; however, the court finds that a genuine issue of material fact exists regarding whether the drawings were *published* prior to December 1, 1990.

Defendants further contend that the building was constructed before December 1, 1990, because construction was well underway by that date. Defendants assert that on October 1, 1990, Executive Square obtained a Soil Erosion and Sediment Control Permit; and a permit covering the plot plan was issued by the Bloomfield Township Building Department on October 20, 1990. The building permit was issued by the township on October 29, 1990. Defendants also contend that "[p]reparation of the site and construction of the building were well underway prior to December 1, 1990." Defendants' br. at 14.

Plaintiff contends that the building was not constructed until 1991. This contention is supported by the affidavit of Al Jokubaitis, who stated, "Rough framing of the Cottingham residence was constructed during February to March, 1991. The roof was installed in March to April, 1991[;] and the structure was bricked April to May, 1991." Jokubaitis aff. at 3.

The court finds that a genuine issue of material fact exists regarding whether there had been sufficient work completed on the structure before December 1, 1990, to constitute "construction," thus excluding the structure as provided in 37 C.F.R. § 202.11(d). Therefore, Defendants are not entitled to summary judgment on this basis.

### IV. Conclusion

The court finds that genuine issues of material fact exist. Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment is **DENIED**.